**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-6709

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

STEVEN LAVONNE MORRIS, a/k/a Worm,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Newport News. Mark S. Davis, Chief District Judge. (4:13-cr-00025-MSD-LRL-1; 4:15-cv-00104-MSD)

Argued: December 12, 2018                         Decided: March 8, 2019

Before AGEE, DIAZ, and HARRIS, Circuit Judges.

Affirmed by published opinion. Judge Harris wrote the opinion, in which Judge Agee and Judge Diaz joined.

**ARGUED:** Kyle Russell Hosmer, MCGUIREWOODS LLP, Richmond, Virginia, for Appellant. Richard Daniel Cooke, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:** R. Trent Taylor, MCGUIREWOODS LLP, Richmond, Virginia, for Appellant. G. Zachary Terwilliger, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

PAMELA HARRIS, Circuit Judge:

Steven Lavonne Morris was sentenced as a career offender under the Sentencing Guidelines, based in part on a prior Virginia conviction for attempted abduction. Morris now seeks relief under 28 U.S.C. § 2255, arguing that his counsel was ineffective for failing to object to use of that conviction as a predicate crime of violence. Because precedent at the time of Morris's 2013 sentencing did not strongly suggest that his career offender enhancement was improper, *see United States v. Carthorne*, 878 F.3d 458, 466 (4th Cir. 2017), we find that counsel was not ineffective. We therefore affirm the district court's denial of Morris's § 2255 motion.

## I.

In 2013, Morris pleaded guilty to one count of conspiring to distribute cocaine and cocaine base. The probation office prepared a Presentence Investigation Report ("PSR"), and based on Morris's criminal history, recommended that Morris be designated a "career offender" under § 4B1.1 of the United States Sentencing Guidelines. As relevant here, that provision applies when a defendant "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). The probation office identified two such convictions: a 1995 drug conviction that qualified as a "controlled substance offense," and – at issue here – a 2005 conviction for attempted abduction under Virginia law that constituted a "crime of violence." As a career offender, Morris's advisory sentencing range would increase substantially, from 262 to

2

327 months' imprisonment to 360 months to life in prison. *See* U.S.S.G. ch. 5, pt. A (sentencing table).

At Morris's 2013 sentencing hearing, defense counsel did not object to the proposed career offender enhancement. Morris, however, addressed the court directly and opposed the enhancement, raising a technical argument about the PSR's calculation of his criminal history points. After an adjournment to allow the parties to brief the issue, the district court ultimately adopted the PSR's sentencing calculations, including the career offender enhancement. Morris's counsel then argued successfully for a downward variance from the advisory range of 360 months to life in prison: In light of factors such as Morris's acceptance of responsibility and cooperation with the government, the district court sentenced Morris to 294 months' imprisonment, to be followed by five years of supervised release.

Morris, represented by a new attorney, appealed his sentence and again challenged his designation as a career offender. This court dismissed the appeal as barred by the appellate waiver in Morris's plea agreement. *See United States v. Morris*, No. 13-4868 (4th Cir. Apr. 28, 2014).

Morris then filed the 28 U.S.C. § 2255 petition that is the subject of this appeal, moving to vacate, set aside, or correct his sentence and raising ineffective assistance of counsel claims regarding both his trial and appellate counsel. Included among those claims was the contention that Morris's trial counsel was constitutionally ineffective because he failed to argue that Morris's attempted abduction conviction did not qualify as a crime of violence under the career offender Guideline.

3

The district court denied Morris's motion without an evidentiary hearing, finding that the record conclusively demonstrated that neither trial counsel nor appellate counsel was constitutionally ineffective. The district court carefully reviewed Morris's claim regarding his trial counsel's failure to object to his career offender enhancement. According to Morris, the court explained, because Virginia's abduction offense covers abduction committed by "deception" as well as by "force" or "intimidation," *see* Va. Code Ann. § 18.2-47, it did not qualify as a crime of violence under the career offender Guideline in effect in 2013, and his counsel performed deficiently in failing to make that argument.

The court rejected that contention for two reasons. First, it explained, the relevant Guidelines commentary enumerated "kidnapping" as a crime of violence, and Virginia's abduction statute expressly provides that "abduction" and "kidnapping" are synonymous. And second, the court found, Morris had failed to point to precedent from the time of his sentencing suggesting that Virginia's abduction offense would not qualify as a crime of violence under the "broadly-interpreted residual clause" of the career offender Guideline. J.A. 385. Instead, the precedent was to the contrary: "[T]he Fourth Circuit repeatedly held that crimes which could be completed through alternative, non-violent elements nonetheless qualified as [] violent felon[ies] due to the potential risk of injury." *Id.* For both those reasons, the court concluded, "trial counsel's decision, to forgo an argument that attempted abduction was not a crime of violence, was within counsel's acceptable wide range of professional judgment" and not constitutionally deficient. J.A. 387. And

4

for good measure, the district court also held that Morris could not show the prejudice necessary to prevail on an ineffective assistance claim.

Morris filed a timely petition for a certificate of appealability, contending that the district court erred in finding that his trial counsel was not ineffective and in denying his § 2255 motion. We granted a certificate of appealability limited to one question: "Whether trial counsel was ineffective for failing to object to the use of Morris'[s] attempted abduction conviction as a predicate offense to sentence him as a career offender." *United States v. Morris*, No. 17-6709 (4th Cir. Mar. 16, 2018).

## II.

When reviewing an appeal from the denial of a § 2255 motion, we review the district court's legal conclusions de novo. *United States v. Carthorne*, 878 F.3d 458, 464 (4th Cir. 2017). For the reasons given below, we affirm the district court's denial of Morris's § 2255 motion.

## A.

This appeal turns on whether Morris's trial counsel rendered constitutionally ineffective assistance because he failed to argue that Virginia's abduction offense did not constitute a crime of violence under the career offender Guideline. For context, we begin by outlining the authorities that govern this question.

At the time of Morris's sentencing in 2013, § 4B1.2 of the Sentencing Guidelines defined a "crime of violence" as any offense that is "punishable by imprisonment for a term exceeding one year," and that:

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). Two of those provisions, both in subsection (2), are relevant here.[1] First is that subsection's list of "enumerated offenses." As the district court explained, although kidnapping does not appear in subsection (2) itself, it does appear in the commentary to § 4B1.2, which "expands upon the roster of enumerated offenses by specifying additional ones, such as manslaughter and kidnapping, that also constitute crimes of violence," *United States v. Mobley*, 687 F.3d 625, 628–29 (4th Cir. 2012). And second is what is known as the "residual clause," reaching offenses that "otherwise involve[] conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2).[2] These are independent and alternative grounds for treating an offense as a crime of violence; if either is satisfied, then the offense qualifies.

At issue in this case is whether Morris's Virginia conviction for attempted abduction qualifies as a crime of violence under either of those clauses. Abduction under Virginia law is defined as follows:

---

[1] The parties do not dispute that Virginia's abduction offense is not a crime of violence under subsection (1).

[2] Since Morris's sentencing, the career offender Guideline has been amended, and the residual clause deleted. *See* U.S.S.G. § 4B1.2 (2016). For purposes of evaluating defense counsel's performance, however, we use the career offender Guideline that was in effect at the time Morris was sentenced, and it is that provision we reference throughout this opinion. *See Carthorne*, 878 F.3d at 462 n.2.

6

> Any person who, by *force, intimidation or deception*, and without legal justification or excuse, seizes, takes, transports, detains or secretes another person with the intent to deprive such other person of his personal liberty or to withhold or conceal him from any person, authority or institution lawfully entitled to his charge, shall be deemed guilty of "abduction." . . . *The terms "abduction" and "kidnapping" shall be synonymous in this Code*.

Va. Code Ann. §§ 18.2-47(A), (C) (emphases added).

Morris acknowledges that when he was sentenced in 2013, there was no authoritative Fourth Circuit decision addressing whether Virginia's abduction offense constitutes a crime of violence for purposes of the career offender Guideline. But according to Morris, Virginia abduction does not – and did not in 2013 – constitute a crime of violence under either of the relevant clauses of § 4B1.2(a)(2). Because Virginia's abduction offense criminalizes a broader range of conduct than the generic crime of "kidnapping" enumerated in § 4B1.2(a)(2) and its commentary, Morris argues, it cannot qualify under the enumerated offenses clause. *See United States v. Flores-Granados*, 783 F.3d 487, 490 (4th Cir. 2015) (state offense constitutes a crime of violence under the enumerated offenses clause only if it "falls within the generic definition" of an enumerated offense). And because it criminalizes abduction committed through non-violent means in the form of "deception," Morris continues, Virginia's abduction offense also does not fall under the residual clause, which applies only when an offense generates a "serious potential risk of physical injury" that is similar in kind and degree to the risks posed by the enumerated offenses, *United States v. Shell*, 789 F.3d 335, 341 (4th Cir. 2015) (quoting U.S.S.G. § 4B1.2(a)(2)).

**B.**

7

With that as background, we turn to the issue in this case: not whether Virginia's abduction offense in fact constituted a crime of violence under the career offender Guideline in effect in 2013, but whether Morris's trial lawyer rendered constitutionally ineffective assistance by failing to argue the issue. We analyze that question under the framework set out in *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984), under which Morris must show, first, that his lawyer's performance fell below an objective standard of reasonableness, and, second, that he was prejudiced by that deficient performance. We agree with the district court that Morris cannot show deficient performance under *Strickland*'s first prong, making it unnecessary for us to consider the question of prejudice under the second. *See Waine v. Sacchet*, 356 F.3d 510, 518 (4th Cir. 2004).

In applying *Strickland*'s performance prong, our "scrutiny of counsel's performance [is] highly deferential," *Strickland*, 466 U.S. at 689, and we start with "a strong presumption that counsel's representation was within the wide range of reasonable professional assistance," *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal quotation marks omitted). To avoid the distorting effects of hindsight, claims under *Strickland*'s performance prong are "evaluated in light of the available authority at the time of counsel's allegedly deficient performance." *Carthorne*, 878 F.3d at 466. A lawyer does not perform deficiently by failing to raise novel arguments that are unsupported by then-existing precedent. *See United States v. Mason*, 774 F.3d 824, 830 (4th Cir. 2014) ("We have consistently made clear that we do not penalize attorneys for failing to bring novel or long-shot contentions."). Nor does counsel fall below

8

*Strickland*'s standard of reasonableness by failing to anticipate changes in the law, or to argue for an extension of precedent. *See, e.g.*, *United States v. Dyess*, 730 F.3d 354, 363 (4th Cir. 2013); *Honeycutt v. Mahoney*, 698 F.2d 213, 217 (4th Cir. 1983).

At the same time, however, as we clarified in *United States v. Carthorne*, counsel sometimes will be required to make arguments "even in the absence of decisive precedent." 878 F.3d at 465–66 (distinguishing *Strickland* standard from "plain error" standard). Even where the law is unsettled, that is, counsel must raise a material objection or argument if "there is relevant authority strongly suggesting" that it is warranted. *Id.* at 466; *see also id.* at 469 (describing obligation of counsel to object to sentencing enhancement where then-existing precedent provides a "strong basis" for the objection). While defense attorneys need not predict every new development in the law, "they are obliged to make [] argument[s] that [are] sufficiently foreshadowed in existing case law." *Shaw v. Wilson*, 721 F.3d 908, 916–17 (7th Cir. 2013); *see also Snider v. United States*, 908 F.3d 183, 192 (6th Cir. 2018) ("We have repeatedly held that counsel is not ineffective for failing to predict developments in the law, unless they were clearly foreshadowed by existing decisions.").

As Morris acknowledges, his proposed objection to his career offender enhancement in 2013 would not have been grounded in any direct or authoritative precedent. The question, then, is whether the authority available at the time of Morris's 2013 sentencing nevertheless "strongly suggested," *Carthorne*, 878 F.3d at 468, that Virginia's abduction offense was not a crime of violence under the career offender Guideline, so that constitutionally competent counsel would have raised an objection.

9

Like the district court, we conclude that then-existing precedent, both within and outside of this circuit, did not strongly suggest that such an objection was warranted.

We need address only briefly Morris's first argument: that case law at the time of his sentencing strongly suggested that abduction under Virginia law is broader than generic "kidnapping," and thus does not qualify as a crime of violence under § 4B1.2(a)(2)'s enumerated offenses clause. As Morris points out, at the time of his sentencing, the only federal circuit court to have squarely addressed this question had adopted precisely his argument, holding that Virginia's abduction statute "outlaws conduct far broader and less serious than the generic definition" of kidnapping. *United States v. De Jesus Ventura*, 565 F.3d 870, 877 (D.C. Cir. 2009). (And since Morris's sentencing, this circuit has held that to fall within generic kidnapping, an offense "must contain as an element an [] aggravating factor" in addition to "restraint by force, threat or fraud," *Flores-Granados*, 783 F.3d at 497 – calling into additional question whether Virginia's abduction offense could qualify.) So we may assume, for purposes of this appeal, that Morris is correct, and that case law at the time of his sentencing "strongly suggested" that his abduction conviction was not a crime of violence by virtue of kidnapping's enumeration in the career offender Guideline.

But even so, counsel's failure to object to Morris's designation as a career offender would not constitute deficient performance unless there also was a strong basis, in 2013, for arguing that Virginia's abduction offense was not a crime of violence under § 4B1.2(a)(2)'s residual clause – which, if applicable, would provide an independent ground for Morris's sentencing enhancement. We thus turn to Morris's second argument:

10

that at the time of his sentencing, precedent strongly suggested that abduction under Virginia law fell outside the residual clause, as well, because it could be committed through non-violent "deception" and thus would not present "a serious potential risk of physical injury" under § 4B1.2(a)(2) in the ordinary case.[3]

Like the district court, we disagree. The problem for Morris is not simply that the law in 2013 was unsettled, in that there was no authoritative precedent addressing the status of Virginia's abduction offense under the residual clause. The problem is that what law there was, far from "strongly supporting" Morris's argument, tilted decidedly in the other direction, making it unlikely (though not inconceivable) that his claim could succeed. And under those circumstances, trial counsel's failure to object to the career offender enhancement does not fall below the professional norms of reasonableness that govern *Strickland*'s performance prong. *See Carthorne*, 878 F.3d at 465 (describing performance standard).

First, by 2013 many courts of appeals had considered statutes very similar to Virginia's, and concluded – contrary to Morris's contention – that the residual clause *does* apply to kidnapping offenses that encompass kidnapping by deceit. Even if originally accomplished by non-violent means, these courts reasoned, kidnapping posed a serious risk of physical injury because of the likelihood that the victim, once alerted to his

---

[3] In applying the residual clause in effect at the time of Morris's sentencing, we employ a "distinctive form" of the categorical approach, asking whether "the ordinary case of an offense poses the requisite risk." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1211 (2018) (internal quotation marks omitted).

or her circumstances, would resist: "[U]nlawful restraint necessarily targets another person for the specific purpose of substantially curtailing that person's freedom of movement. Such conduct categorically sets the stage for a violent confrontation between victim and assailant." *Harrington v. United States*, 689 F.3d 124, 133 (2d Cir. 2012) (internal quotation marks and citation omitted); *see also United States v. Kaplansky*, 42 F.3d 320, 324 (6th Cir. 1994) ("That deception may be used to effect the kidnapping does not erase the ever-present possibility that the victim may figure out what's really going on and decide to resist, in turn requiring the perpetrator to resort to actual physical restraint if he is to carry out the criminal plan.").[4]

Second, as the district court emphasized, while this circuit had not addressed kidnapping by deceit specifically, we had employed the same reasoning to find that other offenses that can be committed by deceit or non-violent means nevertheless come within the residual clause because of the substantial risk of confrontation. In *United States v. Mobley*, 40 F.3d 688, 696 (4th Cir. 1994), for instance, this court found that pickpocketing by stealth constitutes a violent crime because "whenever the pickpocketing fails and the criminal is detected, a confrontation is likely, and the stealthy pickpocketing can progress into something far uglier." Even if the crime initially could be committed by non-violent means, we explained, it nevertheless posed "the requisite potential for

---

[4] Though *Harrington* and *Kaplansky* addressed the residual clause of the Armed Career Criminal Act, we rely interchangeably on precedent under that statute and the career offender Guideline, as "the two terms [were] defined in a substantively identical manner" at the time of Morris's sentencing. *See United States v. Carthorne*, 726 F.3d 503, 511 n.6 (4th Cir. 2013) (internal quotation marks omitted).

serious physical injury to another." *Id.*; *see also United States v. Custis*, 988 F.2d 1355, 1364 (4th Cir. 1993) (finding that breaking and entering constitutes a violent crime under the residual clause because it presents a serious risk of confrontation). Again, our authoritative circuit precedent in 2013 did not address either Virginia's abduction offense or kidnapping by deceit specifically. But it did squarely address the critical premise of Morris's argument – that a crime that can be committed non-violently, as by deceit, cannot qualify as a crime of violence under the residual clause – and found it wanting.

And finally, as of 2013, we had held in a non-precedential, unpublished opinion that the very offense at issue here – Virginia abduction – fell within § 4B1.2(a)(2)'s residual clause. *See United States v. Washington*, 336 F. App'x 343, 345 (4th Cir. 2009) (applying § 4B1.2(a)'s definition of crime of violence to find that defendant committed Grade A violation of supervised release under U.S.S.G. § 7B1.1). To be clear, that decision does not constitute binding authority under our circuit rules, so it would not have foreclosed a contrary argument by counsel. And an unpublished and non-binding decision rejecting a defendant's position may not in all cases establish that counsel has no obligation to advance that position; whether the totality of relevant precedent strongly suggests that a material argument or objection is warranted will require a case- and context-specific analysis. But in this case, given the other precedent arrayed against Morris's contention, our decision in *Washington* further confirms that there was no strong basis for an objection to Morris's career offender enhancement in 2013.

Against this extensive authority, Morris points us to a circuit court opinion from 2006 suggesting that kidnapping by deceit may not constitute a crime of violence under

13

the residual clause because it does not categorically present a danger of physical harm. *See United States v. Gilbert*, 464 F.3d 674, 678–81 (7th Cir.). He also quotes the D.C. Circuit's observation that Virginia abduction covers "less serious offenses" than generic kidnapping, *De Jesus Ventura*, 565 F.3d at 878, which suggests, Morris argues, that it does not pose the same degree of risk as the enumerated kidnapping offense. But this line of argument misunderstands the nature of the *Strickland* inquiry. It is not enough for Morris to prevail under *Strickland*'s performance prong that the law on this question was unsettled at the time of his sentencing, or that an objection would have been plausible and non-frivolous. Morris can prevail only if the relevant precedent strongly suggested that an objection was warranted, and a couple of out-of-circuit cases, weighed against the countervailing authority described above, is not enough to clear that bar. *See Honeycutt*, 698 F.2d at 217 ("While some may contend that counsel, nevertheless, should have been aware of and raised the recent law of a lone federal circuit court, we simply do not agree that failure to do so is indicative of incompetence.").[5]

---

[5] Morris also points to a Second Circuit decision holding that a kidnapping offense that criminalizes the abduction of minors without their parents' consent – as, he alleges, Virginia's abduction offense does – falls outside the residual clause. *See Dickson v. Ashcroft*, 346 F.3d 44, 51–52 (2003). But the offense at issue in *Dickson*, as the Second Circuit explained, extended to cases in which a child victim acquiesces to his or her kidnapping, eliminating the risk of confrontation that otherwise would trigger the residual clause. *Id.* Here, by contrast, Virginia's statute expressly requires that an abduction be committed "by force, intimidation or deception," Va. Code Ann. § 18.2-47(A), precluding "consensual" kidnapping of children and giving rise to a risk of confrontation if and when any deception is uncovered.

14

Because the relevant precedent at the time of Morris's 2013 sentencing did not strongly suggest that a Virginia abduction conviction was not a predicate crime of violence for purposes of the career offender Guideline, counsel's failure to raise that argument did not constitute deficient performance under *Strickland*. And because Morris's ineffective assistance claim may be disposed of solely on the basis of that legal judgment, we reject Morris's argument that the district court abused its discretion by failing to hold an evidentiary hearing. *See* 28 U.S.C. § 2255(b) (district courts need not hold evidentiary hearings where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief"). We therefore affirm the judgment of the district court denying Morris's § 2255 petition.

## III.

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED*